**BROADVIEW FINANCIAL, INC.,**
a California corporation,
Plaintiff,

v.

**ENTECH MANAGEMENT SERVICES CORP., a New York Corporation,** Cosimo S. Polino, Jr., Rolls, Tracy, Davis, Scott, Gioia & Schop, and Vincent S. Tracy, Jr., Defendants.

No. 93–B–1544.

United States District Court,
D. Colorado.

Aug. 2, 1994.

James R. Gordon, Englewood, CO, Morris C. Gore, Dallas, TX, for plaintiff.

James J. Zak, Zak, Fox and Pehr, P.C., Westminster, CO, for Entech and Polino.

Thomas B. Kelley, Nancy Hart–Edwards, Cooper & Kelley, P.C., Denver, CO, for Rolls, Tracy, Scott, Gioia, & Schop.

John M. Palmieri, White & Steele, P.C., Denver, CO, for Vincent Tracy.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Before me are the following motions:

1) Defendants Rolls, Tracy, Davis, Scott, Gioia & Schop (the Law Firm), Vincent S. Tracy, Jr. (Vincent), Entech Management Services, Corp. (Entech), and Cosimo S. Polino, Jr. (Polino) (collectively the defendants) move to dismiss this case for improper venue or, in the alternative, to transfer venue to the United

States District Court for the Western District of New York;

2) The Law Firm and Vincent move to dismiss Entech's and Polino's cross-claim for improper venue or, in the alternative, to transfer venue to the Western District of New York;

3) Polino moves to dismiss the second amended complaint (the complaint) for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2);

4) Polino moves to dismiss plaintiff Broadview Financial Inc.'s (Broadview) breach of contract claim pursuant to Fed. R.Civ.P. 12(b)(6);

5) Polino and Entech move pursuant to Fed.R.Civ.P. 9(b) to dismiss Broadview's claims for fraud, violation of the Securities and Exchange Commission's Rule 10b–5 (Rule 10b–5), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the SEC Act), and Colorado's Securities Act, C.R.S. § 11–51–501 *et. seq.* (the 1990 Act), "control person" liability under 15 U.S.C. § 78t(a) and C.R.S. § 11–51–604(5), and aiding and abetting violations of the SEC Act and the 1990 Act;

6) Polino and Entech move to dismiss Broadview's claims for violation of Rule 10b–5 and § 10b of the SEC Act and the 1990 Act, and control person liability under 15 U.S.C. § 78t(a) and C.R.S. § 11–51–604(5) for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6) and for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1);

7) Polino and Entech move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Broadview's claim for aiding and abetting the violation of the SEC Act and the 1990 Act; and,

8) Polino and Entech move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Broadview's claim for negligent misrepresentation.

The motions are adequately briefed and oral argument will not materially aid in their resolution. Subject matter jurisdiction rests upon 28 U.S.C. §§ 1331 and 1332. For all the reasons set forth below, the defendants' motions to dismiss for improper venue or, in the alternative, to transfer venue will be denied. Polino's motion to dismiss the complaint for lack of personal jurisdiction will be denied. Polino's motion to dismiss Broadview's breach of contract claim will be converted to a motion for summary judgment and all parties will be given a reasonable time to supplement their briefs. Polino's and Entech's motion pursuant to Fed.R.Civ.P. 9(b) to dismiss Broadview's claims for fraud, violation of Rule 10b–5 and § 10(b) of the SEC Act and the 1990 Act, control person liability, and aiding and abetting violations of the SEC Act and the 1990 Act will be denied. Polino's and Entech's motion to dismiss Broadview's claims for violation of Rule 10b–5, § 10(b) of the SEC Act, and the 1990 Act, and control person liability under the SEC Act and the 1990 Act will be granted. Polino's and Entech's motion to dismiss Broadview's claim for aiding and abetting violations of the SEC Act and the 1990 Act will be granted. Polino's and Entech's motion to dismiss Broadview's claim for negligent misrepresentation will be denied.

## I.

This case arises out of a financial consulting agreement (the Agreement) between Broadview and Entech in which Broadview was retained to assist Entech in the identification of a suitable publicly held company with which Entech could effect a reverse acquisition. Complaint, ¶¶ 6 and 8. Broadview filed this action after Entech notified it of its intent to cancel the Agreement. Broadview asserts claims for breach of contract, fraud, violation of Rule 10b–5, § 10(b) of the SEC Act, and the 1990 Act, "control person" liability under the SEC Act and the 1990 Act, aiding and abetting violation of the SEC Act and the 1990 Act, conspiracy, and negligent misrepresentation.

Broadview is a Delaware corporation which maintains its principal place of business in Colorado. *Id.* at ¶ 1. Entech is a New York corporation which maintains its principal place of business in New York. *Id.* Polino is Entech's president and he resides in New York. *Id.* at ¶¶ 1 and 5. The Law Firm is located in New York. *Id.* at ¶ 1. Tracy, a partner in the Law Firm, was Entech's and

Polino's attorney throughout the relevant time period. *Id.* at ¶¶ 1 and 2. Tracy is a New York resident. *Id.* at ¶ 1.

## II.

■ The defendants move to dismiss this case for improper venue pursuant to Fed. R.Civ.P. 12(b)(3) or, in the alternative, to transfer venue to the Western District of New York pursuant to 28 U.S.C. § 1406. On the same ground, the Law Firm and Vincent move to dismiss or, in the alternative, to transfer Entech's and Polino's cross-claim to the Western District of New York. Since the analysis required to dispose of these motions is indistinguishable, I will consider them together.

The defendants contend that venue is improper in Colorado under 28 U.S.C. § 1391(b)(2) which governs venue in diversity actions where federal jurisdiction is not based solely on diversity of citizenship. I disagree. In this case, venue is proper in Colorado under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Broadview's claims occurred here. Section 1391(b)(2) provides in relevant part:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in ... a judicial district in which a substantial part of the events ... giving rise to the claim occurred ...

Broadview executed the Agreement in Colorado after Polino executed the Agreement in New York and transmitted it to Colorado. The Agreement provides that Broadview's services were to be performed in Colorado, where existing opportunities may be located, and other appropriate places. *See* Law Firm's and Vincent's motion, p. 2 and Agreement, ¶ 8. It is undisputed that Broadview performed its services pursuant to the Agreement in Colorado. First, Broadview located the Toen Group (Toen), a Colorado corporation, as a merger candidate. Next, Broadview incurred approximately $200,-000.00 in expenses in Colorado relating to or pertaining to the preparation of Toen for the merger with Entech. In doing so, Broadview allegedly relied upon the Agreement, payment transmitted into Colorado by Poli-

no, and representations of Tracy and Polino to Broadview in Colorado. These events, which occurred in Colorado, constitute a substantial part of the events giving rise to the claims in this case. Because venue of this action is proper in Colorado under 28 U.S.C. § 1391(b)(2), I need not address defendants' other arguments that venue is improper in Colorado under 15 U.S.C. § 78aa, the SEC Act venue provision, or that venue should be transferred to the Western District of New York under 28 U.S.C. § 1406.

## III.

Before determining whether any claims can be dismissed under Fed.R.Civ.P. 12(b)(6), I must determine whether the complaint should be dismissed against Polino for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2). After Polino filed this motion, Broadview filed a second amended complaint. Therefore, in considering Polino's motion, I review the second amended complaint. Polino contends that this court lacks personal jurisdiction over him individually because Broadview fails to allege that he acted in any capacity other than as Entech's president. I disagree.

■ To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, I look to the law of the forum state, Colorado. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Allegations in the complaint, affidavits and other evidence may be sufficient to satisfy plaintiff's burden. *Alameda Nat. Bank v. Kanchanapoom,* 752 F.Supp. 367, 369 (D.Colo.1990). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction. *Behagen,* 744 F.2d at 733. If the parties present conflicting affidavits, all factual disputes are to be resolved in the plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the

contrary presentation by the moving party. *Id.*

■ The determination of jurisdiction involves a two-step inquiry. First, I must determine whether the requirements of Colorado's long arm statute, § 13–1–124, 6A C.R.S. (1993 Supp.) are met. *Custom Vinyl Compounding Inc. v. Bushart & Associates, Inc.,* 810 F.Supp. 285, 287 (D.Colo.1992). Second, I must consider whether exercise of jurisdiction violates federal due process principles. *Id.; See also Doe v. National Medical Services,* 974 F.2d 143, 145 (10th Cir. 1992). Colorado's long arm statute subjects a defendant to jurisdiction concerning any cause of action arising from the transaction of any business within this state. § 13–1–124(1)(a), 6A C.R.S. (1993 Supp.). Jurisdiction also extends to any person who commits a tortious act in Colorado where the cause of action arises from the tortious conduct. § 13–1–124(1)(b), 6A C.R.S. (1993 Supp.) Under Colorado law, I may assert jurisdiction to the fullest extent permitted by the due process clause of the fourteenth amendment. *Waterval v. District Court In and For El Paso County,* 620 P.2d 5, 8 (Colo. 1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

In this case, Broadview asserts claims grounded in both tort and contract. I conclude that, at a minimum, personal jurisdiction exists over Polino under § 13–1–124(1)(b). To satisfy the statutory standard for assertion of long arm jurisdiction under § 13–1–124(1)(b), it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 235 (Colo. 1992). Instead, the statute is satisfied when the resulting injury occurs only in Colorado. *Id.* In *Classic Auto Sales,* a Colorado buyer brought suit against a Nebraska seller of classic automobiles for fraud, negligent misrepresentation, concealment, and deceptive trade practices. The court held that the tortious acts were committed within the state for purpose of assertion of Colorado's long-arm statute because the misrepresentations involved in the seller's alleged false advertising material and telephonic communications

were not complete until received by the buyer in Colorado. *Id.* at 236. The court further concluded that assertion of long-arm jurisdiction comported with constitutional requirements of due process. *Id.* at 237.

To satisfy its burden, Rocci Howe (Howe), president of Broadview, states the following by affidavit. Polino was introduced to him as the president and control person of Entech during a meeting in New York. There, Howe discussed with Polino and others the possibility of a reverse acquisition with a Colorado corporation. Subsequently, Polino made certain representations in telephone conversations with Howe in Colorado. Howe, relying in part on those representations, took action in Colorado to close the reverse merger transaction. Specifically, Broadview expended or incurred liabilities of approximately $200,000.00 in Colorado in furtherance of the reverse acquisition.

The torts at issue here include intentional and negligent misrepresentations directed into Colorado during the course of telephone conversations between Polino, in New York, and Howe, in Colorado. This conduct forms the basis for Broadview's tort claims. Although Polino's conduct originated in New York, the alleged misrepresentation and fraud were not complete until received by Howe in Colorado. *See Id.* at 236. Here, as in *Classic Auto Sales,* Polino's alleged conduct is sufficient to constitute tortious acts within this state under § 13–1–124(1)(b).

I now turn to the constitutional question of due process. Under due process principles, a defendant must have sufficient minimum contacts with the forum state that maintenance of the suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The United States Supreme Court has addressed the issue of what contacts are necessary to satisfy due process in the context of an intentional tort. In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Court approved an "effects" test and held that where a defendant's intentional, and allegedly tortious actions taken outside the forum are expressly directed at causing a harmful effect within

the forum state, a sufficient nexus exists between the defendant and the state so as to satisfy due process. *Id.* at 789–790, 104 S.Ct. at 1486–87.

Here, Polino is not charged with untargeted tortious acts. Rather, his acts were expressly aimed at Colorado. Polino was aware that Broadview's search for an appropriate company would be based in Colorado and that the company it had identified for the reverse acquisition was a Colorado corporation. Therefore, Polino's actions would undoubtedly impact Broadview in Colorado. Under the circumstances, Polino must have reasonably anticipated being haled into court in Colorado where an injury would be incurred by his false statements. An individual injured in Colorado need not go to New York to seek redress from one who, though remaining in New York, caused injury in Colorado. *See Id.*

■ Polino argues that personal jurisdiction is lacking because Broadview fails to differentiate any actions on Polino's part other than in his capacity as Entech's president. This argument is without merit. In *Calder v. Jones,* the Court rejected the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. *Id.* at 789, 104 S.Ct. at 1486. However, the Court recognized that jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him. *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 1482 n. 13, 79 L.Ed.2d 790 (1984). Each defendant's contacts with the forum state must be assessed individually. *Id.* Here, it is Polino's alleged tortious actions, not Entech's upon which Broadview asserts its claims against Polino. Therefore, jurisdiction over him is proper. Accordingly, I hold that Polino's contacts with Colorado are sufficient to support the exercise of personal jurisdiction over him under the due process clause and Colorado's long-arm statute. Polino's motion to dismiss for lack of personal jurisdiction will be denied.

### IV.

Polino moves to dismiss Broadview's breach of contract claim on the ground that Polino is not personally liable under the Agreement. According to Polino, he signed the agreement as Entech's president, not in an individual capacity. Because Polino presents materials outside the pleadings to support his Rule 12(b)(6) motion to dismiss this claim, "the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56". Fed.R.Civ.P. 12(b)(6).

### V.

■ Next, Entech and Polino move to dismiss Broadview's claims for fraud, violation of Rule 10b–5, § 10b of the SEC Act, and the 1990 Act, "control person" liability under the SEC Act and the 1990 Act, and aiding and abetting violations of the SEC Act and the 1990 Act, contending that Broadview failed to plead these claims with particularity as required by Fed.R.Civ.P. 9(b). Under Rule 9(b), "[i]n all averments of fraud ... the circumstances constituting the fraud shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To meet the Rule 9(b) standard, a claimant must identify the circumstances constituting the fraud. *Rosales v. AT & T Information Systems, Inc.,* 702 F.Supp. 1489, 1492 (D.Colo.1988). Specifically, a plaintiff must 1) identify the particular individuals with whom he dealt; 2) designate the occasion on which the fraudulent statements were made, and by whom; and 3) describe what misstatements and half-truths were expressed and how. *Id.* at 1493.

■ Broadview alleges that on or about March 7, 1993, and on several subsequent occasions during March and April of 1993, Polino and Tracy made the following false representations to Broadview's president, Rocci Howe:

a) Entech had $150,000 in cash in Tracy's trust account dedicated to the closing of the Toen acquisition;

b) an audit of Entech was ongoing and almost completed;

c) Toen was an acceptable corporation for the reverse merger transaction with Entech;

d) Entech was ready to consummate a reverse merger with Toen and would consummate it as soon Toen was ready to close;

e) Broadview should proceed with all due haste and diligence to prepare Toen in order to consummate the reverse merger as soon as possible; and,

f) Broadview's expenses in doing so would be fully covered by Entech.

Complaint, ¶¶ 26 and 27. Broadview also alleges that: a) Polino and Tracy knew these representations were false when made or they were aware that they did not know whether the representations were true or false; b) Polino and Tracy intended that Broadview rely on the representations; c) Polino and Tracy both stood to benefit personally and financially from the representations; and, d) Broadview relied and acted upon the representations by expeditiously moving to acquire Toen. Complaint, ¶¶ 14, 18, 28 and 29. As for reliance, Broadview alleges it completed Toen's audit, discharged or otherwise resolved Toen's outstanding liabilities, thoroughly investigated all public records concerning Toen, arranged for the preparation of various legal documents, and paid commissions. Complaint, ¶ 14. Broadview's pleading is sufficient to meet Rule 9(b)'s particularity requirement.

■ Next, Entech and Polino, relying exclusively on New York law, argue that Broadview also failed to specify its factual basis for the conclusory allegations of intent. Broadview alleges that Polino and Tracy intended that it rely on the representations and Polino and Tracy both stood to benefit personally and financially from such representations. Complaint, ¶¶ 28 and 29. Under Fed.R.Civ.P. 9(b), intent may be alleged generally. Moreover, contrary to Entech's and Polino's argument, Broadview sufficiently reveals Tracy's and Polino's motive for making the allegedly false representations. i.e. both stood to benefit personally and financially. *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2nd Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650

(1988). Accordingly, Tracy's and Polino's motion to dismiss Broadview's fraud based claims pursuant to Fed.R.Civ.P. 9(b) will be denied.

### VI.

As its third cause of action, Broadview alleges that the defendants violated Rule 10b–5 and § 10(b) of the SEC Act. Entech and Polino move to dismiss this claim for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6). Alternatively, they move to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

■ Broadview is an investment banking firm. Complaint, ¶ 4. In the Agreement, Broadview was retained to provide its services to Entech in the acquisition of Toen. *Id.* at ¶ 8. In addition to initial compensation, Broadview was to receive additional cash, expense reimbursements, and a fee of 10% of the value of the transaction upon consummation of the reverse merger. *Id.* at ¶ 9. Because the alleged Agreement does not constitute a "security" as defined in the SEC Act, these claims will be dismissed under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). *See Titsch Printing, Inc. v. Hastings,* 456 F.Supp. 445, 447 (D.Colo.1978) (The Securities Exchange Act of 1934 only applies to "securities" as defined in that act). In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Court adopted the *Birnbaum* rule that standing to sue on an implied cause of action under § 10(b) requires a purchase or sale of a security as those terms are defined by the SEC Act. Thus, protection is afforded to a defrauded purchaser or seller of securities only. Although the definition of "security" in the SEC Act is quite broad, *Marine Bank v. Weaver,* 455 U.S. 551, 555, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982), Broadview is neither under the facts as alleged in the complaint.

■ The SEC Act was adopted to restore investors' confidence in the financial markets, and the term "security" was meant to include "the many types of instruments that in our commercial world fall within the ordinary concept of a security". *Id.* at 556, 102 S.Ct.

at 1223 (quoting H.R.Rep. No. 85, 73rd Cong., 1st Sess., 11 (1933)). The statutory definition includes ordinary stocks and bonds along with the "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits ..." *Id.* (quoting *Securities and Exchange Commission v. W.J. Howey, Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946)). Hence, the coverage by the antifraud provisions of the securities laws is not limited to instruments traded at securities exchanges and over-the-counter markets, but extends to uncommon and irregular instruments. *Id.*

Nevertheless, an instrument which seems to fall within the broad sweep of the SEC Act is not to be considered a security if the context otherwise requires. *Id.* 455 U.S. at 558–559, 102 S.Ct. at 1224–25; 15 U.S.C. § 78c(a)(10). Congress, in enacting the securities laws, did not intend to provide a broad federal remedy for all fraud. *Id.* Each transaction which is alleged to involve securities must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole. *Marine,* 455 U.S. at 561 n. 11, 102 S.Ct. at 1225 n. 11.

■ Applying this analysis, I conclude that the Agreement between Broadview and Entech is not a security as defined by the SEC Act. Congress intended the securities laws to cover those instruments ordinarily and commonly considered securities in the commercial world. The Agreement between Broadview and Entech is not the type of instrument that comes to mind when the term "security" is used and does not fall within "the ordinary concept of a security". *See Id.* at 559, 102 S.Ct. at 1225. Furthermore, it does not constitute an unusual instrument found to constitute a security in prior cases which involved offers to a number of potential investors, not a private service transaction such as the one here. In *Howey,* the Court interpreted the term "investment contract" under the broader definition of a "security" in the SEC Act as:

> ... a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party ...

*Howey,* 328 U.S. at 298–299, 66 S.Ct. at 1103. Applying this definition, the Court held that the SEC Act applied to 42 people who purchased interests in a citrus grove during a 4–month period. *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103. In *Securities and Exchange Commission v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), offers to sell oil leases were sent to over 1,000 prospects. *Id.* at 345, 64 S.Ct. at 120. The instruments involved in *Howey* and *C.M. Leasing,* both of which were held to be "investment contracts" under federal securities law, had equivalent values to most persons and could have been traded publicly. *Marine,* 455 U.S. at 560, 102 S.Ct. at 1225. Furthermore, those investing their money expected profits solely from the efforts of a promoter or third party.

Here, in contrast, a service agreement was negotiated and entered into between private parties. Broadview had no expectation of receiving profits solely from Entech or any other third parties' efforts. Instead, it was to be compensated under the Agreement based upon its own efforts. The Agreement was also not designed to be traded publicly. While it does provide that Broadview was to receive a fee of 10% of the value of the transaction upon consummation of the reverse merger, that provision alone is not sufficient to make the Agreement a security. *See Id.* Consequently, the Agreement between Broadview and Entech, in which Broadview's compensation or "profits" is directly tied to its own efforts and was negotiated one-on-one by the parties, is not a security. *See Id.* In addition, any consequences occurring as a result of this Agreement did not occur in connection with the purchase or sale of securities. *Id.; But see Technology Exchange Corp. of America, Inc. v. Grant County State Bank,* 646 F.Supp. 179 (D.Colo. 1986) (contract between developer and corporation under which developer was to manage and develop land in exchange for four percent of the corporation's common stock was a transaction involving the purchase or sale of securities under the SEC Act).

My conclusion is further supported by *Niederhoffer, Cross & Zeckhauser, Inc. v. Telstat Systems Inc.*, 436 F.Supp. 180 (S.D.N.Y.1977) which addressed analogous facts and issues. In *Niederhoffer,* the plaintiff was engaged to find a pool of prospective buyers interested in acquiring defendant's corporation, to educate them as to defendant's business and operations, and to arrange for their introduction to the defendant. Niederhoffer, much like Broadview, was to receive securities as part of its compensation for services rendered. The court held that Niederhoffer lacked standing to sue under the SEC Act because it was not an investor, a purchaser or seller, or a party whose suit for damages could possibly be viewed as advancing the public interest underlying the statute. *Id.* at 185. Here, Broadview also lacks standing to assert its claims for federal securities violations because it was neither a purchaser nor seller of securities. *See Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1159 (10th Cir.1989) (party bringing a private action for money damages under Rule 10b–5 must be actual purchaser or seller of securities.)

As concluded above, Broadview's claim for violation of Rule 10b–5 and § 10(b) of the SEC Act fail for lack of subject matter jurisdiction and for failure to state a claim for relief. In Broadview's next cause of action, it alleges that Polino is liable as a control person for any violations of Rule 10b–5 and the 1990 Act. Having dismissed Broadview's claims for violations of Rule 10b–5 and § 10(b) of the SEC Act, any alleged "control person" liability under the SEC Act must likewise be dismissed. Corporate officers cannot be held liable as control persons for alleged stock transactions where no underlying liability for violations of 15 U.S.C. § 78(j) has been established. *National Bank of Detroit v. Whitehead & Kales Co.*, 528 F.Supp. 940, 949 (E.D.Mich.1981), *aff'd,* 732 F.2d 155 (6th Cir.1984).

■ Broadview's 1990 Act claim must also be dismissed. In relevant part, C.R.S. § 11–51–501(1) provides:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

a) To employ any device, scheme or artifice to defraud;

b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made not misleading; or

c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Broadview's claim alleged under this statute fails for the same reasons that Broadview's federal securities claim fails. While I am not bound by federal law in the interpretation of Colorado's securities law, the Colorado Supreme Court has held that federal authorities that interpret provisions parallel to the Colorado act are highly persuasive. *See e.g., People v. Milne,* 690 P.2d 829, 833 (Colo. 1984) (applying the interpretative test developed in *SEC v. Howey* and adopted by the Colorado Supreme Court in *Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 556 P.2d 1201 (1976) to construe the statutory definition of "security" in Colorado's pre–1990 ACT securities law). While I recognize that under the 1990 Act the definition of a "security" is not identical to the SEC Act, the differences are inconsequential. In particular, section 11–51–201(17) of the 1990 Act refines the term "investment contract" under the broader definition of a "security" by providing:

For purposes of this article, an "investment contract" need not involve more than one investor nor be limited to those circumstances wherein there are multiple investors who are joint participants in the same enterprise.

Because the Agreement at issue here is a service agreement which is directly dependent upon Broadview's efforts, it is not an "investment contract" under federal or Colorado securities law. Thus, while this wrinkle in the 1990 Act's definition of a "security" deserves recognition, it does not require a different conclusion under Colorado's securities law.

Broadview, as under the SEC Act, must have bought or sold a security to assert a claim under the 1990 Act. Section § 11–51–604(3) reads in relevant part:

Any person who recklessly, knowingly, or with an intent to defraud sell or buys a security in violation of section 11–51–501 is liable to the person buying or selling a security in connection with the violation
. . .

Since Broadview has neither purchased nor sold any security giving rise to this action, its claim brought pursuant to the 1990 Act also fails. Moreover, Broadview offers no argument for defining a "security" differently under the parallel 1990 Act nor is there any precedent for doing so. *See Milne*, 690 P.2d at 833. Similarly, as with the "control person liability" under the SEC Act, Broadview's "control person" claim under § 11–51–604(5) is insufficient absent liability under subsection (1), (2), (3), or (4) of § 11–51–604. *See* § 11–51–604(5).

### VII.

■ Next, Entech and Polino move to dismiss Broadview's sixth cause of action charging Polino and Tracy with aiding and abetting the violation of federal and Colorado securities law. A recent Supreme Court case supports the dismissal of this claim. In *Central Bank of Denver v. First Interstate Bank of Denver*, —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Court held that a private plaintiff may not maintain an aiding and abetting suit under § 10(b). *Id.* at ——, 114 S.Ct. at 1455. Consequently, neither Polino nor Tracy can be held liable as an aider and abettor under federal securities law. Because Broadview offers no legal basis for aiding and abetting liability under Colorado's securities law or for an alternative interpretation of Colorado's securities law, I similarly conclude that no aider and abettor liability exists under the 1990 Act. *See Milne*, 690 P.2d at 833. Accordingly, Broadview's sixth cause of action will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### VIII.

Finally, Entech and Polino move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Broadview's negligent misrepresentation claim for failure to state a claim. Specifically, they argue that this claim should be dismissed because it is based upon Entech's and Polino's alleged non-performance of a promise to do something at a future time i.e. to consummate the reverse merger acquisition.

■ Colorado has adopted Restatement (Second) of Torts § 552 (1965) regarding the elements necessary to state a claim for negligent misrepresentation. *See Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69 (Colo.1991). That Restatement section provides in relevant part:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

A party seeking to establish a claim for negligent misrepresentation must show the defendant failed to act reasonably in ascertaining the accuracy of the information supplied or in communicating the information. *High Country Movin' Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo.App.1992). Furthermore, this tort applies only when there has been a misrepresentation of an existing fact. *Id.* It cannot be based upon the non-performance of a promise to do something at a future time. *Id.*

■ In this case, Broadview alleges all of the elements necessary to survive the Rule 12(b)(6) motion. In particular, it alleges that Tracy and Polino made the following negligent misrepresentations: a) Entech had $150,000 in cash in Tracy's trust account dedicated to the closing of the Toen acquisition; b) an audit of Entech was ongoing and almost completed; c) Toen was an acceptable corporation for the reverse merger transaction with Entech; d) Entech was ready to consummate a reverse merger with Toen; e) Entech would consummate it as soon Toen was ready to close; f) Broadview should pro-

ceed with all due haste and diligence to prepare Toen in order to consummate the reverse merger as soon as possible; and g) Broadview's expenses in doing so would be fully covered by Entech. Complaint, ¶¶ 26. With the exception of statements "e", "f", and "g" above, Broadview alleges misrepresentations of existing facts. Broadview further alleges that: a) Polino and Tracy knew such representations were false when they were made or they were aware that they did not know whether such representations were true or false; b) Polino and Tracy intended that Broadview rely on the representations; c) Polino and Tracy both stood to benefit personally and financially from such representations; and d) Broadview relied and acted upon such representations by expeditiously moving to acquire Toen. Complaint, ¶¶ 14, 18, 28 and 29. As for reliance, Broadview alleges it completed Toen's audit, discharged or otherwise resolved Toen's outstanding liabilities, thoroughly investigated all public records concerning Toen, arranged for the preparation of various legal documents, and paid commissions. Complaint, ¶ 14. Broadview has stated adequately a negligent misrepresentation claim. Accordingly, Polino's and Entech's motion to dismiss this claim will be denied.

Accordingly, it is ORDERED that:

1) The defendants' motions to dismiss for improper venue or, in the alternative, to transfer venue ARE DENIED;

2) Polino's motion to dismiss the complaint for lack of personal jurisdiction IS DENIED;

3) Polino's motion to dismiss Broadview's breach of contract claim pursuant to Fed.R.Civ.P. 12(b)(6) is converted to a motion for summary judgment. The parties shall file all pertinent materials and supplemental briefs on or before August 15, 1994;

4) Polino's and Entech's motion to dismiss pursuant to Fed.R.Civ.P. 9(b) Broadview's claims for fraud, violation of the SEC Act and the 1990 Act, control person liability, and aiding and abetting violations of the SEC Act and the 1990 Act IS DENIED;

5) Polino's and Entech's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) Broadview's claims for violation of Rule 10b–5, § 10b of the SEC Act, the 1990 Act, and control person liability under the SEC Act and the 1990 Act IS GRANTED;

6) Polino's and Entech's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) Broadview's claim for aiding and abetting the violation of the SEC Act and the 1990 Act IS GRANTED;

7) Polino's and Entech's motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Broadview's claim for negligent misrepresentation IS DENIED; and,

8) Polino and Entech are awarded their costs incurred in prosecuting Broadview's claims for violation of Rule 10b–5, § 10(b) of the SEC Act, and the 1990 Act, control person liability under the SEC Act and the 1990 Act, and aiding and abetting the violation of the SEC Act and the 1990 Act.