**FIRST ENTERTAINMENT, INC., a Colorado corporation, individually and derivatively on behalf of Polton Corporation, a Nevada corporation, Plaintiffs,**

v.

**Gary R. FIRTH, individually, Byrne, Beaugureau, Shaw, Zukowski & Hancock, P.C., an Arizona professional corporation, James F. Byrne, individually, Defendants.**

Civ. A. No. 94–K–2809.

United States District Court, D. Colorado.

April 24, 1995.

Charles C. Bonniwell, Denver, CO, for plaintiffs.

W. Randolph Barnhart, Mark E. Haynes, Dorothy Huysman Dean, Pryor, Carney and Johnson, Englewood, CO, for Firth.

### ORDER ON MOTION TO DISMISS

KANE, Senior District Judge.

On December 2, 1994, Plaintiff First Entertainment, Inc. ("FEI") filed a complaint in

the Denver District Court against Gary R. Firth ("Firth"), James F. Byrne ("Byrne") and Byrne, Beaugureau, Shaw, Zukowski & Hancock, P.C. ("the Byrne Law Firm"). Firth removed the action to this court on December 8, 1994 and filed an answer to the complaint on December 23, 1994. Upon removal to this court, the case was originally assigned to Chief Judge Matsch. It was reassigned to me on February 9, 1995.

The action arises from securities transactions and agreements entered into among FEI, Firth and Polton Corporation (a nonparty to this action). Byrne and the Byrne Law Firm purported to represent Polton and Firth for certain aspects of these matters.

Subject matter jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. FEI is a corporation incorporated under the laws of and having its principal place of business in the State of Colorado. Firth and Byrne are citizens of the State of Arizona; the Byrne Law Firm is a corporation incorporated under the laws of and having its principal place of business in Arizona.

Before me is the motion of Byrne and the Byrne Law Firm to dismiss for lack of personal jurisdiction.

### I. *Background.*

FEI alleges the following relevant facts in the complaint. FEI, Polton and Firth entered into a stock purchase agreement ("Stock Agreement") dated May 6, 1994 pursuant to which FEI acquired from Firth 843 shares of Polton common stock (an 80% interest) in exchange for 600,000 shares of FEI common stock. The remaining stock of Polton is largely held by the family of Firth. Pursuant to the Stock Agreement, FEI acquired all of the non-voting preferred stock ("Polton Preferred Stock") from Polton in exchange for $250,000. In addition, on May 6, 1994, FEI and Firth entered into a Shareholders Agreement in conjunction with the Stock Agreement.

FEI paid $200,000 cash as consideration for the Polton Preferred Stock and executed a promissory note (the "Note") on May 12, 1994, promising to pay the $50,000 remaining on the purchase price of the preferred stock plus interest on August 12, 1994. Pursuant to the Stock Agreement, Firth became a Director of FEI and the two representatives of FEI became part of the four person Polton Board; with the other two directors to be appointed by Firth.

On May 12, 1994, FEI executed a conditional Collateral Stock Assignment ("Assignment") whereby it pledged the 843 shares of Polton common stock ("Polton Common Stock") that it purchased from Firth to Polton as security for the Note. The Assignment provided that upon payment by FEI of the amount due on the Note, Polton would release all interest in the Polton Common Stock to FEI.

As the primary inducement to enter the Stock Agreement, Firth represented to FEI that Polton operated at a substantial profit for the 1993 fiscal year. FEI relied on such representations when it acquired the stock and executed the Stock Agreement.

The Stock Agreement provided, within seventy-five days of closing, Polton was to furnish FEI with a consolidated balance sheet of Polton for the years 1991–1994. The purpose of the provision was to ensure the representations by Firth that Polton had an operating profit of about $281,000 for 1993 were accurate. After various extensions from FEI, Polton delivered a consolidated balance sheet reflecting that Polton had an operating loss of $69,334 for 1993.

Pursuant to the Stock Agreement, FEI had the right to rescind the agreement within fifteen days of receipt of the consolidated balance sheet. FEI informed Firth that it would terminate the Stock Agreement unless it was amended to reflect the true financial condition of Polton. Firth and FEI entered negotiations concerning alterations and the parties agreed FEI would not pay the remaining $50,000 on the Note due August 12, 1994, pending these negotiations.

During the negotiations, on September 22, 1994, Byrne, purportedly representing Polton and Firth jointly, sent a letter to FEI declaring that, since the payment was not made on August 12, 1994, FEI had defaulted, the Assignment had become absolute, Polton was the owner of the stock and FEI had no right whatsoever in the stock. (Pl.'s Resp. Defs.'

Mot. Dismiss lack Personal Jurisdiction, Ex. "A.") The letter further directed the FEI representatives, Messrs. Olson and Goldberg, must resign from the board of directors and stated FEI's Polton Preferred Stock was also forfeited. (*Id.*)

According to the complaint, the net effect of the letter was an attempt to turn over to Firth 100% ownership of Polton to Firth and to retain for Firth $200,000 in cash and $500,-000 in FEI stock for no consideration. To protect its rights, FEI tendered the $50,000 purportedly owed as the Note provided for a twenty day right to cure upon claim of non-payment.

Byrne, in a letter dated October 4, 1994, declared the default on the Note was not curable and again stated Olson and Goldberg must resign from the Polton Board. (*Id.*, Ex. B.) Byrne also stated in response to FEI's query as to on what authority he purported to act on behalf of its subsidiary without the Polton Board's approval or notification, said "[a]s attorney for Polton I have the right to write letters on behalf of Polton and Firth, as President and a Director of Polton, to deal with defaults by FEI." (*Id.*)

Plaintiff alleges the letter and actions taken pursuant thereto by Firth and the Byrne Law Firm were taken without notice or authorization from the four person Polton board of directors, despite the fact that two of the four were FEI's director representatives, Olson and Goldberg.

## II. *Merits.*

Defendants, Byrne and the Byrne Law Firm, move for an order dismissing this action for lack of personal jurisdiction. They maintain the factual basis for all claims against them is their transmittal of the letters dated September 22, 1994 and October 4, 1994 into Colorado and their alleged improper representation of Polton and Firth. An affidavit of Byrne attached to the motion states the only contacts relevant to this action and the subject transactions these Defendants have had with Colorado are limited to the transmittal of the two letters and an additional letter forwarding certain documents. (Defs.' Mot. Dismiss Lack Personal Jurisdiction, Ex. A.)

FEI responds the transmittal of the letters constituted actions that caused injury to it and formed the basis of FEI's claims against Defendants and Defendants' actions as alleged in the complaint are sufficiently connected to Colorado so as to compel this court to assume in personam jurisdiction over Defendants.

The law of the forum state, in this case, Colorado, determines whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). The determination of personal jurisdiction involves: (1) determining whether the requirements of Colorado's long arm statute, Colo.Rev.Stat. § 13–1–124 (1994 Supp.) are met; (2) whether exercise of jurisdiction violates federal due process principles. *Broadview Financial, Inc. v. Entech Management Services Corp.,* 859 F.Supp. 444, 448 (D.Colo.1994).

The Colorado long-arm statute pertinently provides:

> (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by agent, submits such person and, if a natural person, his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> > (a) The transaction of any business within this state;
> >
> > (b) The commission of a tortious act within this state
>
> . . . .

Colo.Rev.Stat. § 13–1–124(1) (1994 Supp).

"A party seeking a remedy under the long-arm statute is required to allege sufficient facts in the complaint to support a reasonable inference that the nonresident defendant has engaged in conduct under the statute which subjects the nonresident to in personam jurisdiction." *McAvoy v. Dist. Court,* 757 P.2d 633, 634 (Colo.1988) (en banc) (citations omitted). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff

need only make a prima facie showing." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984).

The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Id.* (citations omitted).

■ Where a defendant has countered the claim of personal jurisdiction with a sworn affidavit, a plaintiff who offers no sworn statement to contradict the assertions in defendant's affidavit but merely makes conclusory allegations in its complaint and briefs, will not meet the threshold burden of establishing personal jurisdiction. *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij*, 710 F.2d 1449, 1454 (10th Cir.1983).

Here, Byrne's affidavit asserts his only contacts with Colorado relevant to this motion are the transmittal of the letters referenced in the complaint. These assertions are not contrary to any facts alleged in the complaint, nor are they contradicted in any affidavit offered by FEI. Therefore, they must be accepted as true. The only issue, therefore, is whether the transmittal of the letters is sufficient to establish jurisdiction.

FEI argues the facts alleged in its complaint are sufficient to support a reasonable inference that Defendants engaged in "the transaction of any business" or "the commission of a tortious act" within Colorado as described in the long-arm statute, Colo.Rev. Stat. § 13–1–124(1)(a) and (b) and that the exercise of jurisdiction does not violate due process principles. I conclude, at minimum, personal jurisdiction exists over Byrne and the Byrne Law Firm under § 13–1–124(1)(b).

■ "Colorado courts, and this court in diversity cases, may assert personal jurisdiction to the maximum extent allowed by due process over defendants whose acts outside of Colorado proximately cause effects in Colorado." *Ruggieri v. General Well Service,*

*Inc.*, 535 F.Supp. 525, 533 (D.Colo.1992). To satisfy the requirements for the assertion of statutory jurisdiction under § 13–1–124(1)(b), the tortious act constituting the cause of injury need not have occurred in Colorado; it is sufficient that the resulting injury occurs in Colorado. *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo.1992).

■ FEI's claims against Byrne and the Byrne Law Firm are for civil conspiracy, professional negligence and for injunctive relief. FEI's sixth claim alleges Byrne and the Byrne Law Firm and Firth conspired to seize control of Polton for the benefit of Firth and his family and to seize $200,000 in cash and 600,000 shares of common stock of FEI without consideration by bypassing the board of directors; that monies of Polton have been paid to the Byrne Law Firm solely for the benefit of Firth; and that FEI has been harmed by this conduct in an amount to be determined at trial. (Compl. ¶¶ 39, 40 and 41.)

FEI's seventh claim asserts a tort claim for professional negligence against Byrne and the Byrne Law Firm, stating they acted unreasonably in (1) representing Polton and Firth in violation of Rule 1.13 of the Model Rules of Professional Conduct which states a lawyer retained by an organization represents that organization and owes allegiance to the organization itself rather than individuals connected to the entity; and (2) breaching its duty of Loyalty to Polton and FEI by "[e]ngaging in a civil conspiracy with Firth with the intention of seizing control of Polton." (Compl. ¶ 43.) FEI alleges the negligence of Byrne and the Byrne Law Firm caused damages and injury to Polton and FEI in its capacity as a shareholder of Polton, in an amount to be determined at trial. (*Id.* ¶ 44.)

Byrne and the Byrne Law Firm admit in their motion to dismiss they represented Polton Corporation and Firth for certain aspects of the securities transactions entered into between FEI, Firth and Polton. (Defs.' Mot. Dismiss Lack Personal Jurisdiction at 2.) On May 6, 1994, the date of execution of the Stock Purchase Agreement, FEI became holder of approximately 80% of the common

stock of Polton. (Compl. ¶ 7.) Accepting the allegations in the complaint as true, by purporting to act for Polton, Byrne and the Byrne Law Firm had obligations to the Polton board and shareholders, the principal shareholder being FEI. FEI alleges that through their negligence, Byrne and the Byrne Law Firm caused harm to FEI, a Colorado corporation.

Byrne and the Byrne Law Firm maintain "there is no allegation suggesting any consequences which resulted in Colorado as a result of these letters." (Defs.' Reply Supp. Mot. Dismiss Lack Personal Jurisdiction at 4.) I disagree. FEI has alleged facts sufficient to support a reasonable inference that Byrne and the Byrne Law Firm engaged in tortious conduct outside Colorado which caused injury to FEI in Colorado. These allegations are not controverted by facts in the Byrne affidavit. FEI has met the threshold requirement that a plaintiff make a prima facie showing of jurisdiction over a nonresident defendant to justify the exercise of jurisdiction pursuant to § 13–1–124(1)(b).

I next turn to considerations of constitutional due process. Under the due process clause of the Fourteenth Amendment, a defendant must have sufficient minimum contacts with the forum state such that maintenance of the suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "Specific jurisdiction may be asserted if the defendant has 'purposefully directed' its activities toward the forum state, and if the lawsuit is based upon injuries which 'arise out of' or 'relate to' the defendant's contact with the state." *Doe v. National Medical Services*, 974 F.2d 143, 145 (10th Cir.1992).

Viewing the facts in the light most favorable to FEI, as I must in this motion, Byrne and the Byrne Law Firm, in addressing the two letters to FEI in Colorado, purposely directed their activities toward Colorado and FEI's injuries relate to this contact with Colorado. I conclude the imposition of jurisdiction over Byrne and the Byrne Law Firm would not violate due process. Accordingly,

IT IS ORDERED THAT Byrne and the Byrne Law Firm's motion to dismiss for lack of personal jurisdiction is DENIED.