**PEGASUS HELICOPTERS, INC., a Colorado corporation, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, Allison Engine Company, Inc., an Indiana corporation, and Keystone Helicopter Corporation, a Pennsylvania corporation, Defendants.**

No. 96–K–1528.

United States District Court, D. Colorado.

Feb. 24, 1997.

John R. Rodman, Rodman & Ross–Shannon, Denver, CO, Dan Mahoney, Quiat, Schlueter, Mahoney & Ross, Denver, CO, for Plaintiff.

L. Richard Musat, R. Bruce Phillips, Treece, Alfrey & Musat, P.C., Denver, CO, Chris A. Mattison, Hall & Evans, L.L.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This products liability action arises out of a helicopter crash in Tampico, Mexico, in May 1994. The crash destroyed a helicopter owned and operated by Plaintiff. Plaintiff claims the crash was the result of an in-flight failure of the helicopter's engine.

Plaintiff filed suit in state court against the engine manufacturer, its successor company, and the company that provided maintenance services for the engine, seeking compensation for the loss of the helicopter and other related losses. The maintenance company, Keystone Helicopter Corporation ("Keystone"), removed the action to federal court and now moves to dismiss for lack of personal jurisdiction, arguing it has insufficient contacts with Colorado. I deny the motion.

I.

Jurisdiction over a non-resident defendant in a federal lawsuit based on diversity of citizenship is determined by the law of the forum state—here, Colorado. *Federated Rural Elec. Inc. v. Kootenai Elec.*, 17 F.3d 1302, 1305 (10th Cir.1994). Because Colorado's long arm statute "is coextensive with constitutional limitations imposed by the Due Process Clause," *Hill v. United States*, 815 F.Supp. 373, 375 (D.Colo.1993), one may exercise jurisdiction over Keystone under Colo-

rado law " 'to the maximum extent allowed by due process.' " *First Entertainment, Inc. v. Firth,* 885 F.Supp. 216, 220 (D.Colo.1995) (quoting *Ruggieri v. General Well Serv., Inc.,* 535 F.Supp. 525, 533 (D.Colo.1982)).

"Minimum contacts" is the touchstone of any personal jurisdiction analysis. *Kootenai,* 17 F.3d at 1305 (citing *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). A nonresident defendant must have "minimum contacts" with the forum state such that a court may view that defendant as having "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985)).

Once minimum contacts have been established, the court must ensure that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' " *Kootenai,* 17 F.3d at 1305 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980) and *International Shoe* at 315, 66 S.Ct. at 158). In explaining these "traditional notions" in *World–Wide Volkswagen,* Justice White wrote that the burden on the defendant

> while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute ...; the plaintiff's interest in obtaining convenient and effective relief ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

444 U.S. at 292, 100 S.Ct. at 564–65.

### II.

For the purposes of the jurisdictional question before me, the following facts are undisputed:

Keystone is a Pennsylvania corporation with its principal place of business in Pennsylvania. It has no offices or agents in Colorado and is not registered to do business here. Keystone supplies helicopter parts and maintenance services to customers throughout the United States and the world. Ninety-five percent of Keystone's business is done outside Pennsylvania. *See* Deposition of John H. Loney (Keystone's Vice President/General Manager, Engine Services Division) at 34.

Keystone's sales strategy targets nationwide helicopter operators such as the National Business Aircraft Association, the Airborne Law Enforcement Association and the Association of Air Medical Services. *See* Deposition of Frederick Richard Hinkle (Vice President for Sales) at 21, 37. Keystone advertises in business and trade journals, and sends direct advertising mailings to corporations around the country. Keystone acknowledges sending direct mailings to Colorado-based Air Methods Corporation and Storage Tech, and admits it "may have sent mailings to fourteen other Colorado companies" as well. Reply Br. at 3.

Keystone acknowledges a continuous business relationship with Air Methods Corporation from 1990 to 1995, but asserts the resulting $70,687.67 in billings accounted for an "insubstantial" percentage (less than one percent) of its total revenues during that period. Keystone also acknowledges it has participated in four business transactions involving Colorado companies in the past eight years. Keystone Vice President Loney testified in his deposition that he traveled to Colorado at least once to buy helicopter engines from X–Cell, a Colorado-based company in Denver.

Finally, Keystone admits it overhauled and installed the turbine for the particular helicopter engine Plaintiff claims failed and caused the crash forming the basis of this lawsuit. *See* Loney Affid. (Ex. B to Keystone's Br.Supp.Mot.Dismiss). Keystone sold the engine to a Canadian helicopter maintenance company not knowing where the engine ultimately would be installed.

### III.

While plaintiff bears the burden of establishing minimum contacts, once plaintiff has made a *prima facie* showing, the burden

shifts to defendant to convince the court that an assertion of jurisdiction would be unreasonable. 4 C. Wright & A. Miller, *Fed. Practice and Procedure,* § 1067, pp. 301–02 (West 1987) (discussing Justice Brennan's opinion in *Burger King,* 471 U.S. at 483 n. 26, 105 S.Ct. at 2188 n. 26).

Construing the facts presented in the documents and deposition transcripts before me, I find Plaintiff has made a *prima facie* showing of minimum contacts. The "minimum contacts" test for establishing personal jurisdiction is not susceptible of mechanical application. *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978). Rather, it requires consideration of the specific facts of each case. *Id.*

Here, Keystone has directly targeted up to 16 Colorado helicopter operators with its advertising. In these ads, Keystone offers to "come to" its customers "no matter where [they] are." *See* Pl.'s Br. Opposition to Def.'s Mot. Dismiss (Ex. 3). Keystone has done regular business over the course of five years with at least one Colorado company, and supplies engine parts and products it must intend and can reasonably foresee will end up in helicopters in this state.

Further, Keystone, whether it appears personally or as a nonparty, is an integral player in this lawsuit, having overhauled the specific engine Plaintiff claims caused the accident at issue.

Keystone asserts the 1% of its business that is conducted in Colorado is "insubstantial" for purposes of "minimum contacts," as is the "mere fact" that its national advertising reaches Colorado. Because it lacked privity with the Canadian corporation to which it sold the overhauled engine, Keystone also asserts none of its Colorado contacts gave rise to Plaintiff's injuries.

Keystone argues that where, as here, a plaintiff's alleged injuries do not arise out of defendant's specific contacts with the state, defendant's contacts must be "continuous and systematic" to justify haling it into court. Mot.Dismiss at 4–5 (citing *Doe v. Nat'l Medical Serv.,* 974 F.2d 143, 145 (10th Cir.1992)). According to Keystone, this is a significantly

higher standard that Plaintiff, on this record, has failed to satisfy.

I disagree. The distinction between "specific" and "general" jurisdiction urged by Keystone is not rigid. The overarching question under either approach is whether a nonresident defendant's contacts with a state support an inference that it "purposefully availed" itself of that state's benefits and protections. *Kootenai,* 17 F.3d at 1305. "If a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the defendant to serve the forum state's market," then that defendant may be said to have purposefully availed itself of the protections of that state and "is subject to jurisdiction there." *Fidelity & Cas. Co. of N.Y. v. Philadelphia Resins,* 766 F.2d 440, 446 (10th Cir.1985) ("Placing one's product into the 'stream of commerce' with the expectation of distribution into particular areas is the classic example of such an indirect effort").

Given the nature of Keystone's product and its targeted market, I find Keystone places helicopter engines and other components into the stream of commerce with the expectation of distribution into Colorado, and thus has availed itself of the protections, and concomitant obligations, of Colorado's courts.

The fact Keystone sold the particular engine to a Canadian corporation without knowing it would be sold to Plaintiff compels no contrary conclusion. Even though Keystone did not sell the engine directly to Plaintiff and had no control over its installation into the Plaintiff's helicopter, Keystone did " 'place [the engine] in and move [it] along a stream of commerce destined for [installation in a helicopter] throughout the United States.' " *See Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081, 1085 (5th Cir.1984) (Washington manufacturer of steel casings introduced into stream of commerce with interest in reaching as broad a market as possible and making no attempt to limit states in which casings would be sold and used was subject to jurisdiction in Louisiana) (quoting *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1126 (7th Cir.); *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984)).

This finding comports with *World–Wide Volkswagen,* even though in that case, the Supreme Court held the Oklahoma District Court lacked personal jurisdiction over a New York foreign-car distributor and dealer. As Chief Judge Seymour observed in *Philadelphia Resins,* the *World–Wide Volkswagen* majority focused on the local nature of the defendants' business and the due process concerns of requiring local " 'retailers,' " " 'sellers' " and " 'concessionaires' " to defend against lawsuits all over the country. 766 F.2d at 447–48 (dissenting opinion) (quoting *World–Wide Volkswagen,* 444 U.S. at 296, 100 S.Ct. at 566–67). Such concerns are minimized where the defendant is a national manufacturer or distributor, and personal jurisdiction over such defendants turns on whether they have attempted to serve a given market and can expect their products to be used in a given forum. *Id.* at 448.

Contrary to Keystone's position in this case, the number of contacts defendant has with a particular state is not determinative of the sufficiency of those contacts. Equally important, if not more so, is the nature of the defendant's business and product and the market it serves. Contacts that are sufficient in one context may not be sufficient in another. For example, a company that supplies or maintains highly specialized products in a narrow market all over the country will obviously have fewer business contacts in any given state than a company meeting consumer demands for common products in a local or regional market.

Here, the specialized nature of Keystone's products and the narrow, national market it targets make it unlikely Keystone's business contacts will be concentrated in any one state. If number of sales or percentage of revenues is to be the touchstone of jurisdiction, Keystone may avoid jurisdiction in most (and maybe all) states of the union. Keystone admits 95% of its business takes place outside of Pennsylvania. Based on copies of Keystone ads supplied by Plaintiff in support of jurisdiction, Keystone solicits this business with representations such as: "No matter where you are when you need engine work

... We are just a phone call away"; "We're not asking you to come to us ... We're ready to come to you!" *See* Pl.'s Br. Opposition to Def.'s Mot. Dismiss (Ex. 3).[1]

For its part, Keystone has come forward with no evidence, nor does it even allege, that defending this lawsuit in Colorado would be unconstitutionally burdensome, unreasonable, inconvenient, or otherwise offend "traditional notions of fair play and substantial justice." It suggests no more appropriate alternative forum, and none is apparent in the record.

## IV.

Plaintiff has made a *prima facie* showing that Keystone purposefully directed its commercial activities to the citizens of Colorado and that the instant dispute was a foreseeable result of those activities. In the absence of any allegations or evidence to show the exercise of jurisdiction over Keystone would be constitutionally burdensome, Keystone's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

---

1. These ads also offer free removal, pick-up, delivery, and installation of helicopter engines and parts in states ranging from New England to Florida, to Texas, Oklahoma, and Arkansas. *Id.*